

**SO ORDERED.**

**SIGNED this 15 day of April, 2013.**

_Stephani A. Humrickhouse_
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### FAYETTEVILLE DIVISION

IN RE:                                                                CASE NO.

**PETERKIN & ASSOCIATES, INC.**                       **10-10442-8-SWH**

      **DEBTOR**

### AMENDED ORDER DENYING MOTION TO RECONSIDER

Pending before the court is the Motion to Reconsider filed by the chapter 7 trustee on behalf of the debtor, Peterkin & Associates, Inc. ("Peterkin"), which is congruent in all pertinent respects with the Motion to Reconsider filed by the trustee in the related case of In re Smith, Case No. 11-02629-8-SWH. In both cases, objections to the motions were filed by Greater Image Healthcare, Corp., and a hearing on the motions took place in Raleigh, North Carolina, on April 10, 2013. For the following reasons, the motions will be denied.

### BACKGROUND

The debtor Peterkin owns personal property used in connection with the provision of group homes for mentally and developmentally disadvantaged adults. On December 22, 2010, Peterkin filed a voluntary petition under chapter 11, and George Oliver was appointed as trustee on June 7, 2012. The case was converted to chapter 7 on December 21, 2012, and Mr. Oliver continued as

trustee.  Debtor Alice Smith owns real property where the group homes are operated, and filed a voluntary petition under chapter 13 on April 4, 2011; this case was converted to chapter 11 on December 20, 2012.  On February 7, 2013, with the consent of the debtor and all parties present at the hearing on debtor Smith's motion to dismiss the chapter 11 case, the case was converted to chapter 7 and Mr. Oliver was appointed trustee (hereinafter, as to both cases, "the trustee").

The trustee filed a Motion for Order Authorizing The Auction and Sale of Assets Free and Clear of All Interests in the Peterkin case on February 5, 2013, and in the Smith case on February 8, 2013.[1]  The court held a hearing on those motions for sale in both of these cases, and in connection with the other four parcels of real property and other four lots of associated personal property as well, on March 6, 2013.  At the hearing, the trustee represented that the properties had been auctioned pursuant to procedures authorized by the court and that the high bids were reasonable. The trustee orally moved to have the high bids for each of the properties accepted, and to hold a sale of the assets to each of the winning bidders.  The only bids, and thus the high bids, for two of the Smith properties (Devonshire Trail and Greenhouse Lane, the properties at issue herein), together with the Peterkin personal property situated thereon, were proffered by Greater Image Healthcare, Corp. ("Greater Image").  Greater Image bid $51,500 for each of the Smith real properties, and $10,000 each for the associated Peterkin personal property, in a total amount of $123,000 for all four properties.[2]  Greater Image thus acquired the properties for less than any other high bidders paid for

---

[1] At the request of the trustee, on January 23, 2013, the court granted authority to the trustee to employ Research & Planning Consultants, L.P. ("RPC"), as a consultant for the estate in order to properly value the facilities, licenses, certifications, and other unique attributes of the properties.

[2] The other four Smith properties and the related Peterkin personal property all were sold to other parties for substantially higher amounts.  The remaining Smith properties sold for $150,000; $189,000; $230,000; and $181,000.  The remaining four lots of corresponding Peterkin personal property sold for $230,000; $195,600; $230,000; and $187,000.

any one property, which was evident from the bid summaries prepared by the trustee and used as exhibits in the courtroom.

The court ruled from the bench, granting to the trustee the authority to sell the six residences owned by Smith and leased to Peterkin, as well as the personal property assets owned by Peterkin and located in the six leased facilities, to those high bidders.  The  bidding procedures and the sale process were entirely regular, and Greater Image timely complied with the trustee's request for submission of a deposit.  The court entered an order on March 22, 2013, which captured the terms of the court's bench ruling on March 6, 2013, in which it formally approved the bids and directed transfer of the properties via deed.

After the March 6 hearing, however, Mr. Willie Cooper, a creditor in both cases who was present at the March 6 hearing, requested of the trustee that he reconsider acceptance of the bids related to the Devonshire Trail and Greenhouse Lane real and personal property.[3]  On March 12, 2013, Mr. Cooper tendered bids of $137,700 for the real property at Devonshire Trail and $101,500 for the associated personal property; the bids exceed the value of Greater Image's previously submitted bids by $86,200 and $91,500, respectively.  Mr Cooper also tendered a bid of $131,300 for the real property at Greenhouse Lane and $126,500 for the associated personal property; these bids exceed Greater Image's bids by $79,800 and $126,500, respectively.

Upon receipt of these bids, the trustee, citing his fiduciary duty to maximize the value of the assets of the estate, filed his motions to reconsider to bring to the court's attention these drastically increased bids, such that the court could consider whether the previously- accepted bids accurately

---

[3] Mr. Cooper submitted bids on the other four real properties owned by Smith and associated personal property owned by Peterkin, but was not the high bidder on any of those properties.  He did not bid on the Devonshire Trail and Greenhouse Lane properties.

reflect the true value of the properties.  Greater Image objected, pointing out that it complied with

all auction procedures, submitted what proved to be the high bids in a timely manner, and provided

the required deposit upon request of the trustee.  In Greater Image's view, the bidding process has

now culminated in a "unilateral contract which was fully executed and completed by the tendering

of the bid funds in accordance with the instructions of the Trustee," such that Greater Image has

fully vested property rights in both the Devonshire Trail and Greenhouse Lane properties.  For this

court to revoke these rights by way of reconsideration, Greater Image argues, would be a violation

of Greater Images' property and due process rights.  It maintains, without contradiction by the

trustee, that it is in full compliance with all directives by the trustee and stands ready to complete

all payments necessary to facilitate transfer of the properties.

## DISCUSSION

Both the trustee and Greater Image stand on firm footing and both have compelling

arguments, which make the factual and legal issues before the court that much more difficult to

resolve.  The trustee points out, convincingly, that it is in the best interests of creditors and the estate

to maximize the estate's value through the receipt of such markedly higher sums.  Maximization of

the estate and the full and fair treatment of creditors is, of course, a pillar of the bankruptcy process.

Greater Image volleys back that this may be true, but another key tenet of bankruptcy process is the

use of fair, stable, and transparent procedures to achieve finality in the disposition of estate assets,

as with judicial sales, all of which would be upended if the court were to void this sale on the single

ground of price disparity.  The intersection between the parties' positions is an uncomfortable one,

because both are right.

At issue here is whether there are grounds to vacate the court's order of March 22, 2013, which confirmed the court's oral ruling on March 6, 2013. At the hearing on the motions to reconsider, the trustee based his motion for reconsideration under Rule 9024 of the Federal Rules of Bankruptcy Procedure (which incorporates Rule 60 of the Federal Rules of Civil Procedure) upon "newly discovered evidence," that being the substantially higher sums Mr. Cooper proved to be willing to pay for the Devonshire Trail and Greenhouse Lane properties. While Mr. Cooper's offer for these properties had not yet been made prior to the hearing, the court is not persuaded that the facts of these matters fit within the category of "newly discovered evidence that, with reasonable diligence, could not have been discovered" prior to the disposition at issue. The trustee had benefit of the property valuations it retained RPC to provide (which the court has not seen), and the disparity between the bids received for the other four properties and the Devonshire Trail/Greenhouse Lane properties is marked; however, notwithstanding that disparity, the trustee asked the court to accept those bids. Now, however, the trustee argues that the difference between the new Cooper bids and the original Greater Image bids is such that the original selling price "shocks the conscience," thus supporting the trustee's request that the order be set aside.

The court cannot agree. The process of challenging and undoing a confirmed judicial sale is different from, and more difficult than, the process through which a court may refuse to accept a proffered bid. While many courts, including the Fourth Circuit, agree that a bankruptcy court may refuse to confirm a judicial sale if the price is so grossly inadequate as to "shock the conscience," there is an "important distinction between setting aside a completed sale and refusing confirmation of a sale which has been made subject to the approval of the court." Reid v. King, 157 F.2d 868, 870 (4th Cir. 1946). In Reid, the Fourth Circuit affirmed the decisions of the lower courts to

recognize the authority of the bankruptcy referee to reject the original high bid on certain stocks, and to allow amended bids, ultimately resulting in an aggregate increase of approximately 35% over the original bid amount.   After canvassing other decisions, the court expressed its agreement with Collier's thoughtful take on the matter, as follows:

> Generally speaking, . . . confirmation may be denied on the basis of inadequacy of price where there is a substantial disparity between the bid or contemplated sales price and the appraised or fair market value, and (1) where there is a reliable degree of probability that a substantially better price will be secured by a resale or (2) some element, however, slight, of unfairness on the part of the purchaser.  This represents a compromise between the policy of strengthening public confidence in the stability of judicial sales and that of strengthening the court's hands in its efforts to secure the best possible result for the benefit of the estate under its protection.  *But when the court is faced with a request to set aside a sale and to undo what has already been done with the court's approval, the balance turns in favor of the policy of strengthening public confidence in judicial sales and executed contracts, and, as we have seen, the sale will be set aside only if the grounds alleged are sufficient to invalidate a similar private transaction on equitable grounds.*

Id. at 870-71 (quoting 4 Collier on Bankruptcy § 70.98 at pp. 1584-86 (14th ed.) (emphasis added).

The Reid court  emphasized that it was not considering whether to set aside a completed sale, but rather the circumstances in which the court could refuse to confirm a sale.  Id. at 871.

The consensus among those courts in other jurisdictions that have addressed the question of when a confirmed sale may be set aside is that it is "well settled that after confirmation, the offer of a substantially higher sale price alone is insufficient to set aside a confirmed sale unless the initial sale price is so grossly inadequate as to shock the conscience of the court."  In re Chung King, 753 F.2d 547 (7th Cir. 1985) (citing Smith v. Juhan, 311 F.2d 670, 670 (10th Cir. 1962) and In re Burr Mfg. & Supply Co., 217 Fed. 16, 21 (2nd Cir. 1914)).  The court has reviewed other courts' efforts to flesh out the meaning, in this particular context, of "grossly inadequate" and "shock the conscience of the court."  The parties did not brief those aspects of the issue presently before the

court, and it is apparent that the issue has been peacefully resting in this circuit, relatively undisturbed, since <u>Reid v. King</u>.

In both the Peterkin and Smith cases, this court concludes that it  has before it no legal or factual basis on which it could conclude that the bids offered by Greater Image, proffered by the trustee, and represented by the trustee to be "reasonable" prior to the sale, are now grossly inadequate.  The court's conscience likewise is not "shocked," although its fiscal sensibilities are certainly bruised by the prospect of the estate being unable to capitalize on the higher bid offers, and in that respect it can empathize with the trustee's understandable frustration in the late appearance of a bidder who seemingly could and should have come forward sooner.  All that said, the bottom line is that the sale of these properties was properly effectuated and, in this instance, the balance thus turns "in favor of the policy of strengthening public confidence in judicial sales and executed contracts."  <u>Reid</u>, 157 F.2d at 871 (internal quotations omitted).

For the foregoing reasons, the motion to reconsider the court's order of March 22, 2013, captioned Order Approving Trustee's Motion for Order Authorizing the Sale of Assets Free and Clear of Liens, is **DENIED**.  An identical order will be entered in the related case of <u>In re Smith</u>, Case. No. 11-02629-8-SWH.

**SO ORDERED**.

**END OF DOCUMENT**